# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| BOLIVAR ESTEVEZ, individually and on behalf of all others similarly situated,<br><br>v.<br><br>CHANGE HEALTHCARE, INC. | **Case No.** _____<br>FLSA Collective Action |

## PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT

### Summary

1. Like many other companies across the United States, Change Healthcare, Inc.'s ("Change HC") timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Change HC's organization.

3. As a result, Change HC's workers who were not exempt from overtime under federal law were not paid for all overtime hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours worked after the onset of the Kronos hack.

4. Bolivar Estevez is one such Change HC worker.

5. Change HC could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. But it didn't. Instead, Change HC pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

7. Change HC made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

8. After significant delay, Change HC made payment of some of these outstanding wages. However, portions of these earned wages remain unpaid.

9. Change HC's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Estevez brings this lawsuit to recover these unpaid overtime wages and other damages owed by Change HC to Estevez and Change HC's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Change HC's decision to make its own non-exempt employees workers bear the economic burden for the hack.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Change HC is headquartered in this District.

## PARTIES

13. **Plaintiff Bolivar Estevez** is a natural person.

14. Estevez was, at all relevant times, an employee of Change HC.

15. Estevez has worked for Change HC since at least December 2021.

16. Estevez represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> All current or former non-exempt employees of Change HC (including its subsidiaries and alter egos), who were who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.

17. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

18. **Defendant Change Healthcare, Inc. ("Change HC")** is a foreign corporation.

19. Change HC is headquartered in this District.

20. Change HC may be served by service upon its registered agent, **CT Corporation System, 300 Montvue Rd., Knoxville, TN 37919-5546**, or by any other method allowed by law.

21. Change HC's subsidiaries and alter egos include, but are not limited to:

- Change Healthcare LLC
- Change Healthcare Business Fulfillment, LLC
- Change Healthcare Correspondence Servcies, Inc.
- Change Healthcare Engagement Solutions, Inc.
- Change Healthcare Operations, LLC
- Change Healthcare Payer Payment Integrity, LLC
- Change Healthcare Pharmacy Solutions, Inc.
- Change Healthcare Practice Mangement Solutions, Inc.
- Change Healthcare Solutions, LLC
- Change Healthcare Technologies, LLC
- Change Healthcare Technology Enabled Services, LLC

22. At all relevant times, Change HC exerted operational control over its subsidiaries and alter egos.

23. At all relevant times, Change HC had the authority to set pay practices for workers of its subsidiaries and alter egos.

24. At all relevant times, Change HC substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

25. At all relevant times, Change HC had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

26. Change HC employed and/or jointly employed, with its subsidiaries and alter egos, Ramirez and the Similarly Situated Workers.

27. Change HC and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

28. Throughout this Complaint, Change HC and its subsidiaries and alter egos are referred to jointly as "Change HC."

## COVERAGE UNDER THE FLSA

29. At all relevant times, Change HC was an employer of Estevez within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30. At all relevant times, Change HC was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

31. Change HC was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

32. During at least the last three years, Change HC has had gross annual sales in excess of $500,000.

33. Change HC was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

34. Change HC employs many workers, including Estevez, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

35. The goods and materials handled, sold, or otherwise worked on by Estevez, and other Change HC employees and that have been moved in interstate commerce include, but are not limited to, office supplies, computers, and telecommunications equipment.

## FACTS

36. Change HC provides support for revenue, payment, and other systems for healthcare system participants, including providers and payers.

37. Many of Change HC's employees are non-exempt hourly and salaried workers.

38. Since at least 2021, Change HC has used timekeeping software and hardware operated and maintained by Kronos.

39. On or about December 11, 2021, Kronos was hacked with ransomware.

40. The Kronos hack interfered with the ability of its customers, including Change HC, to use Kronos's software and hardware to track hours and pay employees.

41. For at least a portion of time following the Kronos hack, Change HC failed to keep accurate track of the hours that Estevez and Similarly Situated Workers worked.

42. Instead, Change HC has used various methods to estimate the number of hours Estevez and Similarly Situated Workers work in each pay period.

43. For example, Change HC issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

44. As a result of Change HC's failure to accurately track their actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

45. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

46. Estevez is one of the thousands of employees affected by these pay and timekeeping practices.

47. Instead of paying Estevez for the hours she actually worked (including overtime hours), Change HC simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Estevez's actual hours worked and regular pay rates, in multiple workweeks.

48. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

49. Change HC knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

50. Change HC knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

51. Change HC could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

52. Instead of accurately tracking hours and paying employees their overtime, Change HC decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

53. It was feasible for Change HC to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

54. But Change HC chose not to do that.

55. In other words, Change HC pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

56. Estevez is just one of the many Change HC employees who had to shoulder the burden of this decision by Change HC.

57. Estevez was a non-exempt hourly employee of Change HC.

58. Estevez regularly worked over 40 hours per week for Change HC.

59. Estevez's normal, pre-Kronos hack hours are reflected in Change HC's records.

60. Since the Kronos hack, Change HC has not paid Estevez on time, if at all, for her actual hours worked each week.

61. Since the hack took place, Change HC has not been accurately recording the hours worked by Estevez and its other workers.

62. Even when Change HC has issued payment to Estevez for any overtime, the overtime is not calculated based on Estevez's regular rates, as required by federal law.

63. Change HC was aware of the overtime requirements of the FLSA.

64. Change HC nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Estevez.

65. Change HC's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

66. The full overtime wages owed to Estevez and the Similarly Situated Workers became "unpaid" when the work for Change HC was done—that is, on Estevez and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

67. At the time Change HC failed to pay Estevez and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Change HC became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under federal and California law.

68. In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

69. Any payment made by Change HC to Estevez or the Similarly Situated Workers that Change HC may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

70. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

71. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Change HC's acts and omissions resulting in the unpaid wages in the first place.

72. Estevez and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Change HC under federal law.

## COLLECTIVE ACTION ALLEGATIONS

73. Estevez incorporates all other allegations.

74. Numerous individuals were victimized by Change HC's patterns, practices, and policies, which are in willful violation of the FLSA.

75. Based on her experiences and tenure with Change HC, Estevez is aware that Change HC's illegal practices were imposed on the FLSA Collective.

76. The FLSA Collective members were not paid their full overtime premiums on time, if at all, for all overtime hours worked.

77. These employees are victims of Change HC's respective unlawful compensation practices and are similarly situated to Estevez in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

78. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

79. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

80. Change HC's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

81. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### Cause of Action—Overtime Violations of the FLSA

82. Estevez incorporates each other allegation.

83. By failing to pay Estevez and the FLSA Collective members overtime at 1.5 times their regular rates when the payments were due, Change HC violated the FLSA. 29 U.S.C. § 207(a).

84. Change HC owes Estevez and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

85. Likewise, Change HC owes Estevez and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

86. Change HC knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

87. Because Change HC knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Change HC owes these wages for at least the past three years.

88. Change HC's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

89. Because Change HC's decision not to pay overtime was not made in good faith, Change HC also owes Estevez and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

90. Accordingly, Estevez and the FLSA Collective members are entitled to their full overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

## JURY DEMAND

91. Estevez demands a trial by jury on all issues.

## RELIEF SOUGHT

Estevez prays for judgment against Change HC as follows:

a. For an order certifying a collective action for the FLSA claims;

b. For an order finding Change HC liable for violations of federal wage laws with respect to Estevez and all FLSA Collective members covered by this case;

c. For a judgment aEstevezing all unpaid wages, liquidated damages, and penalties under federal wage laws to Estevez and all FLSA Collective members covered by this case;

d. For a judgment aEstevezing attorneys' fees to Estevez and all FLSA Collective members covered by this case;

e. For a judgment aEstevezing costs of this action to Estevez all FLSA Collective members covered by this case;

f. For a judgment aEstevezing pre- and post-judgment interest at the highest rates allowed by law to Estevez and all FLSA Collective members covered by this case; and

g. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: ___*/s/ Kimberly De Arcangelis*___
    **Kimberly De Arcangelis, Esq.**
    Florida Bar No.: 0025871
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone:   (407) 420-1414
Facsimile:    (407) 867-4791
Email:    kimd@forthepeople.com
*Court Admittance Forthcoming*


R. Burke Keaty, II, BPR#027342
**MORGAN & MORGAN – NASHVILLE, PLLC**
801 Broadway, Suite 105
Nashville, TN 37203
(615) 514-4205
bkeaty@forthepeople.com
*Local 83.01(d) Counsel for Plaintiff*


**Matthew S. Parmet**
TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law
*Court Admittance Forthcoming*

**Attorneys for Plaintiff**